## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMANDA DORITY,** | : | **Civil No. 1:12-CV-1170** |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.   Procedural History

On June 5, 2006, Amanda Ann Dority ("Plaintiff") filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental social security income.  (R. at 9.)  In both applications, Plaintiff alleged disability beginning January 1, 2005.  Id.   On September 13, 2006, the Social Security Administration ("SSA") denied the claims initially.  Id.  Plaintiff's request for a hearing was granted and she appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on March 25, 2008.  (R. at 19.)  On April 10, 2008, the ALJ issued a written decision finding that Plaintiff was not entitled to social security benefits.  (R. at 18.)

On April 24, 2008, Plaintiff filed a request for SSA Appeals Counsel review of the ALJ's decision.  Order at 4, <u>Dority v. Astrue</u>, No. 4:10-CV-1111 (M.D. Pa. March 25, 2011).  On April 16, 2010, the Appeals Council denied her request, making the ALJ's decision the final decision of the Commissioner.  <u>Id.</u>  On May 24, 2010, Dority filed a complaint in the United States District Court for the Middle District of Pennsylvania.  <u>Id.</u>  On March 25, 2011, the District Court reversed the decision of the Commissioner, and remanded the case to the ALJ for further proceedings. <u>Id.</u> at 14-15.

Pursuant to the District Court order, the Appeals Counsel directed the ALJ to obtain medical evidence from a physician regarding Plaintiff's impairments, the severity of her impairments, and her exertional and non-exertional abilities.  <u>Id.</u> at 15; (R. at 396.)  On November 2, 2011, the ALJ held another hearing at which Plaintiff, vocational expert Dr.  Carolyn Rutherford, and medical expert Dr. Robert Sklaroff testified.  (R. at 412-45.)  On December 12, 2011, the ALJ issued a written decision denying Plaintiff's claims for a second time.  (R. at 407.)

On June 20, 2012, Plaintiff filed the Complaint and thus initiated this civil action.  (Pl.'s Br. 3.)  This social security appeal is fully briefed by both parties and is, therefore, ripe for resolution.

## II.    <u>Statement of Facts</u>

Plaintiff was born on July 23, 1958.  (R. at 87.)  She graduated from high school and has previously worked as a school crossing guard, a teacher's aide, a daycare operator, a deli clerk, a cashier, a cosmetologist, and a home health aide. (R. at 387.)  Plaintiff has had diabetes since she was 11 years old and is insulin dependent.  (R. at 343.)

On February 24, 2004, approximately 11 months prior to her alleged disability onset date, Plaintiff injured her back when she slipped and fell on black ice.  (R. at 387.)  She was treated at St. Luke's Emergency Room and released the same day.  (R. at 29-30.)  On October 11, 2004, an MRI of Plaintiff's lumbar spine revealed "very mild degenerative disc disease" with no disc herniation, canal stenosis, or foraminal narrowing.  (R. at 341.)  A lower extremity arterial Doppler performed two days later revealed no abnormalities.  (R. at 342.)

On January 10, 2005, Plaintiff was treated at the ER for elevated blood sugar levels.  (R. at 150-54.)  On January 19, 2005, Plaintiff reported that her blood sugar level had improved.  (R. at 278.)  On February 23, 2005, ophthalmologist Andrew S. Kimmel, M.D., assessed that Plaintiff had posterior vitreous separation in both eyes and trace background diabetic retinopathy in both eyes, but her visual acuity was within normal limits.  (R. at 212.)

On August 16, 2005, Susan Sefcik, M.D., treated Plaintiff for lower back muscle spasms. (R. at 265.)  Plaintiff acknowledged that the pain, which did not radiate to her extremities, was relieved by hot showers, ointment, and Naprosyn. (R. at 265.)   On September 1, 2005, Dr. Bruno noted Plaintiff's continued complaints of lower back pain and morning stiffness, but reported that her motor skills were 5/5, and her reflexes were 2/4.  (R. at 263.)   On September 15, 2005, Dr. Kimmel assessed Plaintiff with, among other things, diabetes mellitus, trace background diabetic retinopathy in both eyes, and posterior vitreous separation in both eyes.  (R. at 211.)  He stressed the importance of blood sugar control in the management of her diabetes, and recommended a fluorescein angiogram of both eyes.  (R. at 211.)  The test revealed renal drusen in both eyes, but no significant macular edema or proliferative diabetic retinopathy in either eye.  (R. at 209.)

On December 1, 2005, Dr. Bruno reported that Plaintiff had tenderness in the lumbar area, exhibited a slow gait, and had a positive straight leg raise test. (R. at 256.)  On December 15, 2005, Dr. Phillips found that Plaintiff's diabetes, blood sugar levels, and lower back pain were controlled with medication.  (R. at 254-55.) Plaintiff began physical therapy on April 18, 2006. (R. at 229.)  During the course of treatment, which included pool therapy and other exercises, Plaintiff's lower back pain improved.  (R. at 231-33.)

On November 22, 2006, Plaintiff began treatment at Comprehensive Pain Centers.  (R. at 360.)   At her initial visit, Plaintiff stated that pool therapy and stretching relieved her pain.  (R. at 360.)  On examination, Plaintiff exhibited intact spine range of motion, normal muscle strength, intact sensation, slightly diminished deep tendon reflexes, tenderness in her lumbosacral spine, and a positive straight leg raise test.  (R. at 517-18.)  She was assessed with sacrolititis and lumbar facet disease.  (R. at 518.)  She underwent a sacroiliac joint injection. (R. at 359.)   However, Plaintiff did not pursue further injections because of the injection's effects on her glucose levels.  (R. at 513.)

On January 3, 2007, a lumbar spine MRI revealed a small diffuse disc bulge at the L4-L5 and L5-S1 levels, with minimal neural foraminal narrowing and spinal canal stenosis, as well as mild ligamentum flavum hypertrophy at the L4-L5 level.  (R at 364.)  Over the period from March 2007 to December 2007, Plaintiff's providers at Comprehensive Pain Centers generally reported that she had a stable gait, decreased range of motion in her lumbar spine with facet joint tenderness, intact strength, normal muscle strength, and negative straight leg raising.  (R. at 502-14.)  They continued to treat Plaintiff with pain medication since she was not a candidate for steroid injections.  (R. at 503.)

Between March 2008 and June 2008, Plaintiff complained of pain in her neck, shoulders, and upper back, along with lower back pain.  (R. at 495-99.)

Between August 2008 and December 2008, she described pain over her entire body. (R. at 488-94.) During 8 visits to Comprehensive Pain Centers, Plaintiff's examiners generally noted that she had a stable gait, limited lumbar spine range of motion, intact strength in her legs, and tenderness in her neck and back. (R. at 497-98.) However, in December 2008, Plaintiff also exhibited limited range of motion in her right shoulder and slightly decreased (4/5) grip strength in her hands. (R. at 488.) During 8 routine visits at Comprehensive Pain Centers in 2009, Plaintiff complained mostly of pain in her back and legs. (R. at 477-87.)

On February 7, 2009, right shoulder x-rays were normal, and neck x-rays revealed straightening of the normal cervical lordosis secondary to muscular spasm but were otherwise normal. (R. at 452-53). On May 15, 2009, a lumbar spine MRI revealed mild degenerative disc disease at L1-L2, no evidence of a disc protrusion or spinal stenosis, and no other significant findings. (R. at 450-51.)

Through August 2011, Plaintiff's examiners continued to report that despite tenderness and limited range of motion in her lumbar spine, Plaintiff remained neurologically intact with normal motor strength, intact sensation, and negative straight leg raising. (R. at 462-75.) On March 29, 2011, Dr. Andrea Coprio added fibromyalgia to her diagnosed medical conditions. (R. at 464.) On February 18, 2011, a radiology report revealed mild central stenosis at L4-L5. (R. at 449.)

**(a) Consultative Physical Examination**

On August 12, 2006, H. N. Olewiler, M.D., an internal medicine specialist, examined Plaintiff.  (R. at 343-52.)  Plaintiff gave a history of hard-to-control diabetes mellitus, weight gain, and back pain.  (R. at 343.)  She told Dr. Olewiler that although physical therapy helped her back pain, she stopped going due to problems with transportation.  Id.  She reported being able to climb the fourteen steps in her home and walk three to four blocks before being affected by pain.  (R. at 343-44.)  Plaintiff walked normally, dressed and undressed, and performed all requested maneuvers without assistance.  (R. at 345.)  She had no gross joint deformities or edema.  Id.  Despite exhibiting positive straight leg raising at 45 degrees bilaterally, she had intact joint range of motion, 5/5 bilateral grip, and 5/5 flexion and extension strength in her lower and upper extremities.  Id.  Dr. Olewiler noted the presence of various impairments but failed to complete a medical source statement of Plaintiff's ability to perform work related activities. (R. at 345-46.)

**(b) Independent Medical Examination**

On April 17, 2007, physiatrist Robert O'Leary, D.O., conducted an independent medical examination in connection to Plaintiff's lawsuit related to a 2004 slip-and-fall accident.  (R. at 366-70.)  Plaintiff told Dr. O'Leary that

medications helped her tolerate activities of daily living, but she has had to modify her activities to include sitting every fifteen minutes.  (R. at 367.)  She explained that she quit working as a crossing guard three weeks earlier but stated that she continued to attend psychology classes part-time.  (R. at 367-68.)  She explained her current treatment consisted of home stretching exercises, heat and ice, and oral medication, all of which she reported helped her symptoms.  (R. at 367.)

Dr. O'Leary reported that Plaintiff's gait was non-antalgic, but she had reduced range of motion; 4+/5 motor strength in her hips; 5/5 motor strength in her knees and ankles; blunted though intact deep tendon reflexes; and only mildly positive straight leg raising.  (R. at 368-69.)  Dr. O'Leary opined that Plaintiff could not return to sustained work, should not lift more than 10 pounds, should not perform frequent bending or twisting of the trunk, and should change positions each hour.  (R. at 370.)

**(c) Medical Expert Testimony**

Robert Sklaroff, M.D., testified as an independent medical expert at the administrative hearing on November 2, 2011.  (R. at 410-55.)  After reviewing Plaintiff's medical history, Dr. Skarloff testified that the record demonstrated that Plaintiff had the primary diagnoses of insulin-dependent diabetes, discogenic disease, and fibromyalgia.  (R. 413-14.)  Dr. Skarloff opined that Plaintiff's

medical conditions did not meet or medically equal any listed impairment.  (R. at 420-21.)   He testified that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; perform postural movements without limitation; and had no other restrictions.  (R. at 422.)

### (d) Vocational Evidence

On January 1, 2008, vocational rehabilitation consultant Carole Fisher provided a Vocational Evaluation Report in connection to Plaintiff's slip-and-fall lawsuit.  (R. at 378-88.)   Plaintiff told Ms. Fisher that she drove occasionally, attended church, taught a forty-five-minute Sunday school class every other Sunday, occasionally used the computer, attended community college classes between September 2006 and May 2007, and worked part-time as a school crossing guard until March 2007.  (R. at 386-87.)  Ms. Fisher opined that Plaintiff was unable to maintain full-time work since January 2005 or part-time work since April 2007 due to the injuries she sustained in the February 2004 slip-and-fall accident.  (R. at 388.)

Dr. Carolyn Rutherford testified as a vocational expert during the administrative hearing on November 2, 2011.  (R. at 436-43.)  The ALJ asked Dr. Rutherford whether jobs existed for a hypothetical individual of Plaintiff's age, education, and work history, who was limited to performing light work involving

no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling.  (R. at 438-39.)  Dr. Rutherford testified that a person with such a background and limitations could perform Plaintiff's past relevant jobs of school crossing guard, home health aide, and childcare attendant.  (R. at 439.)  Dr. Rutherford further testified that the hypothetical person also could perform unskilled, light jobs existing in significant numbers in the national economy, including the representative occupations of assembler, laundry worker, and packer. (R. at 439-40.)

## III.     Standard of Review

This Court's review of the Commissioner's decision denying social security benefits is a narrow one, and is limited to whether there is substantial evidence in the record to support the Commissioner's findings, and whether ALJ applied the correct legal standards. 42 U.S.C. § 405(g); Richardson v Perales, 402 U.S. 389, 401 (1971); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008).   The substantial evidence standard is a deferential standard of review.   Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); see also Johnson, 529 F.3d at 200 (citing Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)).  The substantial evidence standard does not require a large or considerable amount of evidence; however, it does require "more than a mere scintilla," meaning "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)); Pierce v. Underwood, 487 U.S. 552, 564; see also Johnson, 529 F.3d at 200 (quoting Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).   Therefore, if a reasonable mind might accept the relevant evidence as adequate to support the Commissioner's conclusion, then the Commissioner's determination is supported by substantial evidence.   Jones, 364 F.3d at 503; Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

## IV.   Social Security Disability Benefits and the Five-Step Process

"In order to determine if an applicant is entitled to Social Security disability benefits, the ALJ applies a five-step sequential evaluation process." Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 480 (3d Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v)).   If a claimant fails to satisfy the requirements of steps one, two, four or five then the ALJ will find that the claimant is not disabled.   Id.   "An affirmative answer at steps one, two or four leads to the next step.   An affirmative answer at steps three or five results in a finding of disability."   Id.

First, the ALJ considers the claimant's work activity, and if she is performing substantial gainful activity, the ALJ will find that she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).   Second, the ALJ considers the medical severity of

the claimant's impairments, and if she does not have a severe medically determinable physical or mental impairment or a combination of impairments that has lasted or is expected to last twelve months or result in death, the ALJ will find that the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii); § 404.1509 (the duration requirement).   Third, the ALJ considers the medical severity of the claimant's impairments, and if she has an impairment that meets or equals one of the "Listings" and meets the duration requirement, the ALJ will find that the claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).  Fourth, the ALJ considers the assessment of the claimant's residual functional capacity ("RFC") and her past relevant work, and if she can still do her past relevant work, the ALJ will find that she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).  Fifth and finally, the ALJ considers the assessment of the claimant's RFC and her age, education, and work experience to see if she can make an adjustment to other work, and if she can make such an adjustment the ALJ will find that she is not disabled.  However, if the claimant cannot make an adjustment to other work, the ALJ will find that she is disabled.   20 C.F.R. § 404.1520(a)(4)(v).

## V.    <u>The ALJ's Decision</u>

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date until her date last

insured.  (R. at 398.)  At step two, the ALJ found that Plaintiff had the following severe impairments:   diabetes mellitus, discogenic disease, fibromyalgia, and obesity.  (R. at 399.)  At step three, the ALJ found that as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listing.  Id.

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a home health aide and childcare assistant.  (R. at 405.)  Although the ALJ's finding at step four was sufficient to establish that Plaintiff was not disabled under the SSA regulation, the ALJ continued his analysis by finding at step five that Plaintiff would also be able to successfully adjust to other work.  (R. at 406.)  The ALJ found that Plaintiff's RFC allowed her to perform "the full range of light work."  Id.  The ALJ thus found that Plaintiff was not disabled.  Id.

## VI.   Discussion

In this appeal, Plaintiff asserts that the ALJ erred by (1) concluding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Pl.'s Br. 9-13); and (2) choosing to rely on the analysis of the vocational expert and medical examiner that testified at the administrative hearing, as opposed to the physician and vocational expert consulted in connection to

Plaintiff's slip-and-fall lawsuit (Pl.'s Br. 13-18).  This Court finds that the ALJ's decision was supported by substantial evidence.

### (a) The ALJ followed the correct legal standards in his analysis of Plaintiff's credibility regarding the severity of her symptoms

The regulations describe a two-step process for evaluating symptoms. SSR 96-7P, 1996 WL 374186 (July 2, 1996).  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the individual's pain or other symptoms.  Id.  Second, once an underlying physical or mental impairment has been established, the ALJ must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to work.  Id.

Whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator will decide the credibility of the individual's statements based on a consideration of the entire case record.  Id.  An individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence in the case record.  Id. (citing 20 C.F.R. 404.1529(c)(4), 416.929(c)(4)).

"When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186 (July 2, 1996).   The determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.   Williams v. Barnhart, 211 F. App'x 101, 104-05 (3d Cir. 2006) (citing SSR 96–7p).

In determining Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (R. at 404.)  However, based on his review of the medical records, the ALJ did not find Plaintiff to be entirely credible regarding the extent and severity of her impairments and limitations.  Id.  The ALJ assigned great weight to the opinion of Dr. Sklaroff, who evaluated the entire record and pointed out that there were no examinations or chemical findings to support a finding of neuropathy or radiculopathy.  (R. at 404-05.)  Dr. Sklaroff also testified that Plaintiff had mild stenosis, which was stable, with no disc disease, and her hips were "okay."  Id.  Although Dr. Sklaroff found no postural limitations, the ALJ gave Plaintiff "every

benefit of the doubt" and found that a restriction to only occasional postural activities was warranted. (R. at 405.) Based on his review of Plaintiff's medical records, Dr. Sklaroff opined that Plaintiff could work on a light exertional level with minimal postural restrictions. (R. at 401, 421-22.) Thus despite Plaintiffs subjective complaints, Dr. Sklaroff's opinion based upon Plaintiff's medical records constituted substantial evidence to support the ALJ's finding that Plaintiff was able to perform a range of light work. Given the deferential standard of review which applies to these ALJ determinations, our conclusion that some substantial evidence supports the ALJ's decision on this issue compels affirmance of this decision.

### (b) ALJ did not err in assigning "great weight" to the opinion of Dr. Sklaroff, assigning "no weight" to the opinion of Dr. O'Leary, and discounting the evaluation by Ms. Fisher

Although the SSA considers opinions from medical sources on issues such as whether a claimant meets the statutory definition of disability, the final responsibility for deciding these issues is reserved to the Commissioner. 20 C.F.R. § 416.927(d)(1). A statement by a medical source that a claimant is "disabled" or "unable to work" does not mean that the claimant is actually disabled under the statutory definition. Id. However, an ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.

Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); see also Carter v. Railroad

Retirement Bd., 834 F.2d 62, 65 (3d Cir.1986); Kent v. Schweiker, 710 F.2d 110,

115 n. 5 (3d Cir. 1983).  Where the opinion of a physician conflicts with that of a

non-treating, non-examining physician, the ALJ may choose which opinion to

credit so long as he does not reject evidence for no reason or for the wrong reason.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

Plaintiff asserts that the ALJ erred by relying on the opinion of Dr. Sklaroff

because it was based on the opinion of a disability claims examiner and not

supported by other medical evidence.  (Pl's Br. 17.)  However, Dr. Sklaroff

referred to multiple evaluations and tests conducted by multiple doctors as the

basis for his findings.  (R. at 416-20.)  In his evaluation of Plaintiff's medical

records, Dr. Sklaroff's relied heavily on the medical records from Comprehensive

Pain Centers and the radiology and MRI reports from St. Luke's Hospital.  Id.

Although Dr. Orweiler is a disability claims examiner and he did not complete a

medical source statement, Dr. Sklaroff's findings were further supported by Dr.

Orweiler's opinion that claimant was able to do some level of work that required

her to remain on her feet. (R. at 405.)  Thus, the ALJ was within the scope of his

discretion to rely on Dr. Sklaroff's opinion because it was based on objective

medical evidence.

Plaintiff asserts that the ALJ erred by not according weight to Dr. O'Leary's opinion and accuses the ALJ of bias.  (Pl.'s Br. 16-17.)  Dr. O'Leary opined that Plaintiff could not return to work in any capacity due to her traumatic injuries.  (R. at 405.)  The ALJ assigned no weight to Dr. O'Leary's opinion because it was inconsistent with the overall medical record and was obtained by Plaintiff's counsel in furtherance of a personal injury lawsuit.  Id.  Dr. O'Leary's opinion was contradicted by the Comprehensive Pain Centers records as well at St. Luke's radiology and MRI reports that were relied on by Dr. Sklaroff.  (R. at 416-20.)  The ALJ's observation that Dr. O'Leary's evaluation was obtained by Plaintiff's representative in furtherance of a personal injury lawsuit was merely an additional consideration that further supported his decision not to accord Dr. O'Leary's opinion great weight.  However, as we construe the ALJ decision this observation by the ALJ, which is made in the context of a thorough analysis of this medical evidence, does not reveal "blatant and evident bias," as alleged by Plaintiff.  (Pl.'s Br. 17.)

Plaintiff further asserts that the ALJ erred by not according weight to the evaluation of vocational rehabilitation consultant Carole Fisher who opined that Plaintiff was no longer employable because of the injuries resulting from her 2004 slip and fall.  (Pl.'s Br. 16; R. at 388.)  A vocational rehabilitation consultant, such as Ms. Fisher, is not an acceptable medical source; therefore, her opinion is not

entitled to any significant weight.  20 C.F.R. § 416.913(a).  Even if Ms. Fisher's assessment could be accorded the same weight as that of a doctor, a doctor's opinion can never bind the Commissioner on the issues reserved to the Acting Commissioner.  20 C.F.R. § 416.927(e)(1)-(3); SSR 96-5p, 1996 WL 374183 (S.S.A.).  In any event, Ms. Fisher's assessment was contradicted by both Dr. Sklaroff's testimony (R. at 410-55.), which was based on objective medical evidence, and by Dr. Rutherford's testimony.  (R. at 436-43.)  Thus, the ALJ was within the scope of his discretion to discount Ms. Fisher's evaluation.

## VII.  **Conclusion**

In conclusion, upon consideration of the administrative record, the ALJ's decision, and the parties' briefs, we find that the ALJ's decision was supported by substantial evidence and should be upheld.  42 U.S.C. § 1382c; Richardson 402 U.S. at 401; Johnson, 529 F.3d at 200.

Accordingly, the Plaintiff's appeal is DENIED and this case will be CLOSED.  An appropriate order will follow.

So ordered this 16th day of July, 2014.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge